UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DONALD A. PETERSON and LORI HILDMEYER,

        Plaintiffs,

v.                                     Case No: 6:18-cv-84-Orl-31DCI

PNC BANK, N.A.,

        Defendant.

**REPORT AND RECOMMENDATION**

This cause comes before the Court for consideration following oral argument on the following motion:

> **MOTION:** MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL AND FOR SANCTIONS AGAINST PLAINTIFFS' COUNSEL (Doc. 76)
>
> **FILED:** October 4, 2018
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part**.

### I.    Introduction

While the background of this matter may be fairly lengthy, the issue at hand is straightforward, and Plaintiffs' counsel's conduct is inexcusable. Defendant produced discovery materials to Plaintiffs and, in doing so, made an inadvertent disclosure of unredacted materials over which Defendant intended to assert privilege. Plaintiffs' counsel, recognizing that the materials may contain attorney-client privileged communications, immediately informed Defendant of the potential inadvertent disclosure. In email communications with Defendant's

counsel, Plaintiffs' counsel promised to sequester the materials, although Plaintiffs disputed whether the materials were actually privileged. This matter came to the Court's attention and, at a hearing, the Court discussed the procedure the Court would utilize to determine the question of privilege as to the sequestered materials and provided a deadline for Defendant to file a motion for protective order. At that same hearing, Plaintiffs' counsel assured the Court that the materials would remain sequestered until the Court determined the issue of privilege. But then, inexplicably, Plaintiffs' counsel used the sequestered materials in filing the Amended Complaint; a fact now undisputed but initially unrealized by Defendant or the Court and then denied by Plaintiffs once discovered.

When Defendant properly moved for a protective order – arguing explicitly that the sequestered materials were privileged – it did not realize Plaintiffs' counsel's transgression. And when Plaintiffs' counsel failed to respond to that motion (despite an extension of Plaintiffs' deadline to respond), the Court granted the motion for protective order as unopposed and directed Plaintiffs' counsel to destroy the sequestered materials – again, not realizing that Plaintiffs had already used those materials in a public filing. The Court's order that Plaintiffs' counsel destroy the sequestered materials should have ended the matter. But Defendant eventually became aware of the use of the sequestered materials and filed a motion for disqualification and for sanctions against Plaintiffs' counsel; the awareness possibly due to Plaintiffs' counsel in this case sharing the information contained within the sequestered materials with Plaintiffs' attorney in the underlying state court foreclosure action, where that attorney referenced the information contained within the sequestered materials. Doc. 76 (the Motion).

In Plaintiffs' response to the Motion, Plaintiffs' counsel repeatedly denied the "specious" allegation that Plaintiffs' counsel used the sequestered materials in the Amended Complaint. But

at the hearing on the Motion, ***Plaintiffs' counsel explicitly admitted using the sequestered materials in drafting the Amended Complaint***, flatly refuting the assertions in the very response to the Motion; although the attorney who may be personally at fault failed to appear at the hearing.

The undersigned is hard-pressed to envision a more clear-cut violation of Federal Rule of Civil Procedure 26(b)(5)(B), which violation has been compounded by Plaintiffs' counsel's representations to the Court and opposing counsel. Accordingly, for the reasons stated in this Report, it is respectfully recommended that certain of Plaintiffs' counsel be disqualified, the portions of the Amended Complaint derived from the sequestered materials be stricken, and certain of Plaintiffs' counsel bear the cost of the litigation related to this matter.

## II.  Procedural and Factual Background

In March 2014, Defendant initiated a state court foreclosure action concerning Plaintiffs' residence in circuit court in Seminole County, Florida. That action remains pending.

On January 17, 2017, Plaintiffs filed this federal action against Defendant, invoking this Court's federal question and supplementary jurisdiction by raising a claim pursuant to the Real Estate Settlement Procedures Act (RESPA) (Count VI) and five state law claims (Counts I through V). Doc. 1. All the claims are related to allegations that the aforementioned state court foreclosure action is wrongful.

Discovery commenced, and, on May 29, 2018, Defendant served a supplemental production to Plaintiffs in response to Plaintiffs' first set of discovery. That supplemental production included an unredacted copy of Defendant's Loan Activity Notes (also referred to in this Report as the "sequestered materials").

On May 31, 2018, Plaintiffs' counsel, Attorney Darren Newhart of the Consumer Law Organization, P.A. (CLO), emailed Defendant's counsel and stated that the newest production, i.e.

the Loan Activity Notes, may contain an inadvertent production of attorney-client privileged material. Specifically, Mr. Newhart stated as follows:

> Good afternoon. While reviewing Defendant's supplemental production, it appears there may have been an inadvertent disclosure of attorney/client privilege material, although no privilege log was filed with the production. I know you e-mailed me last Friday and indicated you were reviewing the documents for attorney/client privilege material, but I just want to err on the side of caution before proceeding. Please review and let me know if any information is attorney/client privileged.

Doc. 68-1. Other of Plaintiffs' counsel were on this email, including Attorneys J. Dennis Card, Jr. of CLO and Jordan A. Shaw of Zebersky & Payne, LLP.

Within an hour on that same date, Defendant's counsel explained to Mr. Newhart that there was a technical error on Defendant's end concerning the production, requested that the Loan Activity Notes sent to Plaintiffs be destroyed, and stated that the "correct" (i.e. redacted) documents would be immediately forwarded to Plaintiffs. *Id*. On June 1, 2018, Plaintiffs counsel received a hard copy of the redacted Loan Activity Notes via FedEx, along with another request for Plaintiffs to destroy the inadvertently produced unredacted Loan Activity Notes. Doc. 68-2.

On June 1, 2018, the parties held two telephone calls and exchanged several emails concerning the inadvertent production. *See, e.g.*, Docs. 88-3 through 88-7. In sum, Plaintiffs' counsel refused to destroy the unredacted Loan Activity Notes, asserted that privilege had been waived through the inadvertent disclosure, and intended to raise the matter with the Court. *See id*. But most importantly, Attorney Newhart made the following promise that, pursuant to Federal Rule of Civil Procedure 26(b)(5)(B), he had and would continue to sequester the unredacted Loan Activity Notes pending a determination by the Court as to Defendant's claims of privilege:

> Good morning. Plaintiffs will be filing a motion under Rule 26 and Local Rule 1.09 asking the Court to perform an in camera review of certain entries in the servicing log to determine if the information is privileged or protected, and whether that privilege or protection was waived. It is our position that certain entries in the servicing log are not covered by any privilege or protection. ***As required under***

> ***Rule 26, the information was sequestered until the Court makes the determination*** . . . .

Doc. 88-4 at 4 (emphasis added).

Over the next few days, Defendant provided a privilege log to go with the redacted Loan Activity Notes and Plaintiffs took issue with the sufficiency of that privilege log. On June 5, 2018, this culminated in Plaintiffs filing a motion for leave to file the sequestered materials under seal so that the Court could conduct an *in camera* review pursuant to Rule 26(b)(5)(B). Doc. 43 (the Motion to Seal). In the Motion to Seal, Plaintiffs explicitly requested "the Court to review certain information to confirm that it is not subject to attorney-client privilege or work-product protection. Federal Rule of Civil Procedure 26(b)(5)(B) applies because the information was inadvertently produced to Plaintiffs' counsel, Consumer Law Organization, P.A., in unredacted form." *Id*. at 1. In the Motion to Seal, Plaintiffs' counsel explained that during a review of the unredacted Loan Activity Notes on May 31, 2018, counsel "felt that the entries may contain some privileged or protected information" so they alerted Defendant to the potential inadvertent disclosure and "sequestered the unredacted information pending the Court's review." *Id*. at 3-5.

On June 12, 2018, the Court held a hearing on an unrelated motion to quash a subpoena. Doc. 47. Mr. Newhart appeared at that hearing for Plaintiffs. Following the Court's determination of the motion to quash, the parties raised the issue of the Motion to Seal. Doc. 54 at 21-26. Mr. Newhart presciently expressed concern that a motion to disqualify may be filed against him some time in the future due to an "informational advantage" he may have obtained from reviewing the sequestered materials, and concluded by explaining his purpose in filing the Motion to Seal:

> One, in that the defendants don't want to further give away privilege. And, two, you know, myself, we don't want to -- I don't want to have an issue where later on down the line a motion to disqualify is filed because, you know, something was seen or wasn't seen or whatever, you know, whatever it may be.

> And so that's the reason that we're operating under Rule 26 and why we tried to file it as quickly as possible.

*Id*. at 23-24.[1]  The Court then discussed with the parties that the materials would remain sequestered, the parties should confer further concerning their dispute, and, barring a resolution, the Court would deny the Motion to Seal and direct the parties to further brief the issue of the applicability of privilege to the sequestered materials.  *Id*. at 24-26.  Thus, on June 19, 2018, the Court entered an order denying the Motion to Seal and directing as follows:

> On or before June 26, 2018, Defendant shall provide to Plaintiff a privilege log that fully complies with the undersigned's standing order regarding the procedure for the assertion of privilege (the Standing Order). Then, on or before July 3, 2018, the parties shall confer in a good faith effort to resolve the dispute without the need for court intervention. *See* Fed. R. Civ. P. 26(c)(1); Local Rule 3.01(g). Finally, on or before July 17, 2018, Defendant, to the extent necessary, shall file a motion for protective order in accordance with the undersigned's Standing Order.

Doc. 51.

On July 5, 2018, the Court held a hearing on an unrelated motion to compel.  Docs. 44; 62.  At that hearing, Mr. Newhart appeared for Plaintiffs.

On July 12, 2018, Plaintiffs filed an Amended Complaint.  Doc. 65.  Among other new allegations – and particularly relevant to the Motion before the Court – the Amended Complaint contained paragraph 157, which read as follows:  "Unsurprisingly, on or about February 4, 2016, PNC's research revealed that the Petersons never defaulted under the Mortgage."  *Id*. at 22.

On July 20, 2018 (having received a brief extension), Defendant filed its Motion for Protective Order, seeking, among other relief, destruction of the sequestered materials.  Doc. 68.  In particular, a document within the sequestered materials with Bates number PETERSON0365 had become a focus of the parties during the conferral process, with Defendant asserting privilege

---

[1] In the transcript, this portion is erroneously attributed to Defendant's counsel.

- 6 -

over that document and Plaintiffs disputing that claim of privilege. In addition, Defendant attached to the Motion for Protective Order an affidavit from Sarah Greggerson, an officer of Defendant. Doc. 68-5 (the Greggerson Affidavit). According to Ms. Greggerson, Defendant maintained Loan Activity Notes in the course of its business, including in relation to the loan at issue in this litigation, and certain of the sequestered materials (identified by Bates number) included Loan Activity Notes that documented communications between Defendant and outside law firms retained to represent Defendant concerning the litigation surrounding Plaintiffs' loan, which communications Ms. Greggerson described as follows:

> 14. I have reviewed the Loan Activity Notes produced by PNC in this litigation, Bates Stamped PETERSON023 - PETERSON0555. Each of the redacted entries are: (1) direct communication from outside counsel related to litigation; (2) a copy and paste of communication received from outside counsel related to litigation; (3) a summarization of communication to and/or from outside counsel related to litigation; and/or (4) research prepared for outside counsel in the course of legal representation or in preparation of litigation.
>
> 15. For example, the information contained in the single redacted entry on PETERSON0365 was received via e-mail by PNC from its counsel, McGlinchey Stafford, on or about January 29, 2016. This e-mail correspondence received from McGlinchey Stafford, which reflect the impressions of PNC's counsel and status of the ongoing foreclosure litigation, was directly copied and pasted into MSP by the Default Litigation Clerk, Tina Adams a/k/a Tina Preston shortly after receipt of same.

Doc. 68-5 at 3. In the Motion for Protective Order, Defendant squarely argued that the sequestered materials were subject to both the attorney-client and work-product privileges. Doc. 68 at 8-12.

On August 1, 2018, Plaintiffs filed a timely and unopposed motion for an extension of time to respond to the Motion for Protective Order, and the Court granted the requested extension. Docs. 71; 72. But Plaintiffs never responded to the Motion for Protective Order, so that motion became unopposed. *See* Local Rule 3.01(b); Doc. 16 (the CMSO) at 5.

Thus, on August 9, 2018, the Court entered an Order granting in part the Motion for Protective Order. Doc. 74. In particular, the Court found that Defendant had not waived privilege by inadvertently disclosing the sequestered materials and directed Plaintiffs to destroy the sequestered materials, but "deem[ed] it unnecessary to rule on the applicability of the privilege as to each of the documents at issue." *Id*. at 2. Given the foregoing history of this litigation, the Court believed it was directing Plaintiffs to destroy documents that Plaintiffs had sequestered immediately upon receipt, so there was no need to also decide whether the documents were privileged.

On October 4, 2018, Defendant filed the Motion to Disqualify that is now before the Court. Doc. 76 (the Motion). In the Motion, Defendant asserts that Plaintiffs' counsel must be disqualified because they utilized the sequestered materials both in drafting the Amended Complaint and in relation to the underlying state court litigation. In particular, Defendant asserts that Plaintiffs utilized the information contained within PETERSON0365 – the only document in the sequestered materials containing a date of entry of February 4, 2016 – to draft the allegations in paragraph 157 of the Amended Complaint. According to Defendant, there could be no other source for the allegation in paragraph 157.

In response, Plaintiffs repeatedly denied using the sequestered materials in any manner whatsoever, going so far as to assert that: "[Defendant] makes the specious allegation that Plaintiffs' . . . used the document in its Amended Complaint. It did not." Doc. 78 at 5. Plaintiffs once again asserted that they sequestered the inadvertently disclosed unredacted Loan Activity Notes and "never disseminated the information" therein to counsel in the underlying foreclosure action. *Id*. at 6. In addition, Plaintiffs, for the first time in this litigation, sought to challenge Defendant's privilege log and Defendant's claims to privilege concerning the sequestered

materials – the exact issues raised in Defendant's Motion for Protective Order to which Plaintiffs failed to respond.

On November 14, 2018, the Court held a hearing on the Motion. Plaintiffs were represented at the hearing by Mr. Card and Mr. Shaw, but Mr. Newhart failed to appear at the hearing.[2] Doc. 87. Most relevant to the Court's consideration of the Motion, Defendant admitted into evidence an email from Defendant's outside counsel to Defendant that acted as a cover letter for a spreadsheet that contained "monthly case status reports for the cases" that outside counsel were handling for Defendant in Florida and several other states. Doc. 88-7. This is the email referenced by Ms. Greggerson in her affidavit, and the attachment to this email was submitted for *in camera* review, without objection, as was PETERSON0365. That attachment contains the text entry that was placed in the Loan Activity Notes, inadvertently disclosed to Plaintiffs as PETERSON0365, allegedly sequestered, and then utilized in drafting paragraph 157 of the Amended Complaint.

At the hearing, Plaintiffs' counsel admitted to using the information in PETERSON0365 in paragraph 157 of the Amended Complaint – a fact vehemently denied in their written response. In fact, when asked directly for the basis of the allegations contained in paragraph 157, Mr. Card told the Court that, "it absolutely comes from Peterson 365" and that it would be a "misrepresentation" to deny that fact. Doc. 94-3 at 47, 49; *see id*. at 51 (Mr. Card: "That's where the information came from, Your Honor, was a review of 365."). Without even a pretense of a

---

[2] Despite the purpose of the hearing (to disqualify counsel due to alleged misconduct), Mr. Newhart's central role in the alleged misconduct, and the fact that Mr. Newhart had attended every prior hearing in this case, Mr. Newhart chose not to attend the hearing. Mr. Newhart had ample notice of the hearing and never sought to continue the hearing. On the other hand, the hearing was continued once upon an unopposed request of Defendant. At the hearing, Mr. Card represented that Mr. Newhart had pre-arranged, annual travel to New York but did not otherwise explain why Mr. Newhart failed to attend the hearing or seek to continue the hearing.

denial that Plaintiffs used the sequestered materials in drafting the Amended Complaint at a time when the materials were sequestered and, thus, with no other argument to make that would potentially prevent disqualification, Plaintiffs repeatedly argued that PETERSON0365 was not privileged. Incredibly, because the Court did not make a privilege finding when it ordered the sequestered materials destroyed, Plaintiffs' counsel seemingly felt they could use the materials: "But because the order did say specifically that Your Honor did not determine privilege, we felt that we were in an okay position to proceed forward."[3] Doc. 94-3 at 45. Plaintiffs' counsel also admitted that they failed to respond to the Motion for Protective Order due to a calendaring error but did not otherwise explain why they failed to seek reconsideration of the Court's order or seek leave to file a belated response. Doc. 94-3 at 44. Further, Mr. Shaw sought to distance himself from Mr. Newhart and Mr. Card of CLO, arguing as follows: "I did review the complaint as it was filed. I did make edits and help draft. But as to any information pertaining to the unredacted documents, I've not seen, used, or understand what is in those entries . . . ." Doc. 94-3 at 42; *see id*. at 53-54 (Mr. Shaw denied that his law firm ever received the sequestered materials), 76 (Mr. Card confirmed that neither Mr. Shaw nor Mr. Wooten reviewed the sequestered materials). Indeed, Mr. Shaw argued that, "even though sequestered information was used in a complaint while pending a determination of privilege, we believe that perhaps disqualification of all counsel is not the proper remedy." Doc. 94-3 at 62; *see id*. at 58-59 (Mr. Shaw requested that the Court not disqualify all three law firms when the focus appeared to be on Mr. Newhart), 65 (Mr. Shaw expressed his "hopes that in the event a counsel is disqualified, my firm can stay on."). Finally, Plaintiffs denied providing the sequestered materials to counsel in the underlying foreclosure

---

[3] This argument is not only substantively flawed but also based on an apparent misunderstanding of the timeline: the sequestered materials were used *prior* to the order that they be destroyed, and at a time when they were unequivocally sequestered.

action; according to Mr. Card, "The information was absolutely not used in the state court case, just to make that clear."  Doc. 94-3 at 61.  But Mr. Card's denials that he communicated information about the sequestered materials to counsel in the underlying state court foreclosure action must be squared with the fact that both Mr. Newhart and Mr. Card filed a notice of appearance in the state court foreclosure action on September 11, 2018 – thus infecting those proceedings with their knowledge of the sequestered materials flowing from this case.  Doc. 88-2 (while the notice specifically identifies Mr. Newhart, both Mr. Card and Mr. Newhart filed the notice).

Following the hearing, on December 7, 2018, Defendant filed an authorized reply, in which Defendant asserted that Plaintiffs' counsel in the underlying state court foreclosure litigation had filed a motion to compel documents from Defendant that are directly at issue in this federal case – including the sequestered materials.  Doc. 94.  Thus, according to Defendant, the informational advantage obtained by Mr. Card and Mr. Newhart is having real consequences for Defendant not only in this action, but also the state court foreclosure action.

On December 18, 2018, Plaintiffs filed an authorized sur-reply.  Doc. 97.  In the sur-reply, Plaintiffs solely argue that the sequestered materials, and PETERSON0365 in particular, are not privileged.  According to Plaintiffs, "every court to address the issue requires the party withholding information under a claim of privilege to make a *prima facie* showing that the privilege applies."  *Id*. at 2.

### III.  Discussion

#### a.  Legal Standard

A court in this District recently and succinctly summarized the law in this area in a case cited to and relied upon by both parties:

Under Florida law:

> [t]he receipt of an inadvertent disclosure warrants disqualification when the movant establishes that: (1) the inadvertently disclosed information is protected, either by privilege or confidentiality; and (2) there is a "possibility" that the receiving party has obtained an "unfair" "informational advantage" as a result of the inadvertent disclosure. These two elements are, of course, interrelated, because only the inadvertent disclosure of privileged or confidential information can yield an "unfair" "informational advantage." However, the fact that the inadvertently disclosed information is privileged or confidential, standing alone, does not automatically warrant disqualification.

*Moriber v. Dreiling*, 95 So. 3d 449, 454 (Fla. 3d Dist. Ct. App. 2012) (citing *Atlas Air, Inc. v. Greenberg Traurig, P.A.*, 997 So. 2d 1117, 1118 (Fla. 3d Dist. Ct. App. 2008) and *Abamar Hous. & Dev., Inc. v. Lisa Daly Lady Décor, Inc.*, 724 So. 2d 572, 573–74 & n. 4 (Fla. 3d Dist. Ct. App. 1998) ("*Abamar II*") ). Nonetheless, the party seeking disqualification does not need to establish specific prejudice in order to justify disqualification. *Abamar II*, 724 So. 2d at 573 (citing *Junger Util. & Paving Co., Inc. v. Myers*, 578 So. 2d 1117, 1119 (Fla. 1st Dist. Ct. App. 1989), and *Zarco Supply Co. v. Bonnell*, 658 So. 2d 151, 154 (Fla. 1st Dist. Ct. App. 1995)).

To determine whether receiving counsel possibly gained an unfair informational advantage, courts look at the content of the inadvertent disclosure and the actions taken by the receiving lawyers upon their receipt of the inadvertent disclosure. *Moriber*, 95 So. 3d at 454 (citing *Atlas Air, Inc.*, 997 So. 2d at 1118). Courts reason that "it would be impossible to determine whether there is a possibility that the receiving attorneys obtained an unfair informational advantage without knowing how and to what extent they reviewed, copied, or disseminated the inadvertent disclosure." *Id*. (citing *Atlas Air, Inc.*, 997 So. 2d at 118–19). Additionally, courts note that "the actions of the receiving attorneys shed light on whether any informational advantage was obtained 'unfairly.'" *Id*. at 455 (quoting *Abamar II*, 724 So. 2d at 574 n. 4, and *Morse v. Clark*, 890 So. 2d 496, 497 (Fla. 5th Dist. Ct. App. 2004) ).

An attorney who promptly notifies the producing party of the inadvertent disclosure of privileged and protected documents and immediately returns the inadvertently produced documents without exercising any unfair advantage will not be subject to disqualification. *Id*. (citing Rule 4–4.4(b) of the Rules Regulating the Florida Bar). Expanding this rationale to federal procedure, if an attorney complies with Federal Rule of Civil Procedure 26(b)(5)(B) without exercising any unfair advantage, disqualification would also not be appropriate.

> "The party moving for disqualification of counsel bears the burden of proving grounds for disqualification." *Bedoya*, 861 F. Supp. 2d at 1350 (quoting *Armor Screen Corp. v. Storm Catcher, Inc.*, 709 F. Supp. 2d 1309, 1310 (S.D. Fla. 2010)). Because a party is presumptively entitled to counsel of its choice, disqualification should be ordered only for compelling reasons. *Id*.

*Walker v. GEICO Indem. Co.*, No. 6:15-CV-1002-ORL-41KRS, 2016 WL 11234453, at *2–3 (M.D. Fla. Sept. 13, 2016), *report and recommendation adopted*, 2017 WL 1174234 (M.D. Fla. Mar. 30, 2017).

In *Walker*, the parties conferred and agreed that the moving party had "made a *prima facie* showing that the documents listed on the Final Privilege Log are privileged or protected, as claimed." *Id*. at *6. Thus, the magistrate judge considered whether disqualification was required and found that it was. In so finding, the court expressed concern that "[p]recluding use of the privileged and protected information cannot, however, erase it from the minds of counsel for [the defendant] or prevent [the defendant] from making strategic decisions in this case based on its knowledge of that information." *Id*. at *7. The defendant in *Walker* objected to that finding, and in rejecting that objection, the district court found that the moving party had "established a sufficient possibility that the [law firm who received the inadvertent disclosure] obtained an unfair informational advantage by reviewing the privileged or protected information . . . and therefore, the [law firm] must be disqualified." *Walker v. GEICO Indem. Co.*, No. 6:15-CV-1002-ORL-41KRS, 2017 WL 1174234, at *11 (M.D. Fla. Mar. 30, 2017).

> b. *The Inadvertently Disclosed Information is Protected*

Here, the primary argument by Plaintiffs in seeking to avoid disqualification is that the sequestered materials are not privileged. As an initial matter, the undersigned finds that such an argument is waived. Plaintiffs had an opportunity to litigate this issue in response to the Motion for Protective Order, but Plaintiffs failed to do so. They should not now have a second bite at the

apple. While the Court did not find it necessary to make a finding that the sequestered materials were privileged when it ordered them destroyed (exactly because the Court ordered those materials destroyed), Plaintiffs' lack of opposition to Defendant's claims of privilege over the exact same materials at an earlier stage of this litigation should bind Plaintiffs, and they should not be allowed to re-litigate the issue now that they face disqualification due to a clear transgression of the Rules governing this Court. What is most perplexing is that early on Mr. Newhart was fully cognizant of this issue and his corresponding responsibilities – he immediately recognized the inadvertent disclosure of privileged communications, reached out to Defendant and assured Defendant that the materials would be sequestered pending a judicial determination of privilege, and then even filed a motion (the Motion to Seal) seeking an appropriate *in camera* determination. But then, inexplicably, while the issue was pending before the Court, Plaintiffs' counsel chose to use the sequestered materials in drafting and filing the Amended Complaint. And then, when Defendant called out Plaintiffs for what they did (by filing the Motion), Plaintiffs denied their wrongdoing (in their response). Only when standing before the Court did Plaintiffs' counsel – with Mr. Newhart absent – admit what happened. The undersigned is hard-pressed to imagine a more clear-cut violation of Rule 26(b)(5)(B).

Regardless, the undersigned will also, as an alternative basis supporting this Report and Recommendation, address Defendant's claim of privilege over the sequestered materials. As Plaintiffs concede, the issue before the Court is whether Defendant has established a *prima facie* case that privilege applies. Keeping that standard in mind, the undersigned finds that Defendant has met its burden and established a *prima facie* case that privilege applies to the sequestered materials. Specifically, it appears that the inadvertently unredacted information contained within the sequestered materials, and in particular PETERSON0365, are the communications between

Defendant and its outside counsel concerning pending litigation. As is not unusual, Defendant's outside counsel authored an email to Defendant that contained an attachment giving Defendant an update on all pending cases in a particular region that outside counsel was handling for Defendant at the time. This is established not only through the email itself (admitted into evidence at the hearing) but also in Ms. Greggerson's affidavit and the attachment that the undersigned considered *in camera*. It then appears that – at least as to Plaintiffs' loan – outside counsel's updates were copied by an employee of Defendant into the Loan Activity Notes associated with Plaintiffs' loan in Defendant's database system. That system was accessible only by certain of Defendant's employees, an access control implemented through user IDs.

Plaintiffs truly take issue with only one aspect of Defendant's record-keeping system in asserting that the sequestered materials lack privilege:[4] Plaintiffs assert that Defendant failed to establish that the otherwise privileged information within the Loan Activity Notes did not lose its privilege because it was too widely disseminated within Defendant's corporate structure.[5] In other words, Plaintiffs asserted that because 310 of Defendant's employees had access to the Loan Activity Notes (including approximately 20 employees who Defendant could not identify because the user ID had been deleted), Defendant had not established that the Loan Activity Notes could

---

[4] Plaintiffs other arguments, such as the application of the crime-fraud exception, wholly lack merit and do not warrant any further discussion.

[5] Because this argument was raised for the first time in response to the Motion and because Defendant (justifiably, in the opinion of the undersigned) took the position that Plaintiffs waived their opportunity to litigate the privilege of the sequestered documents when they failed to respond to the Motion for Protective Order, the undersigned stated at the hearing that if the undersigned recommended denying the Motion on the basis that Defendant had failed to establish privilege, that the recommendation would be that the denial be without prejudice.

contain any privilege.[6] In support, Plaintiffs cited to *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1387 (Fla. 1994) (*Southern Bell*), which identified "the following criteria to judge whether a corporation's communications are protected by the attorney-client privilege:"

> (1) the communication would not have been made but for the contemplation of legal services;
>
> (2) the employee making the communication did so at the direction of his or her corporate superior;
>
> (3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;
>
> (4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;
>
> (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Id*. at 1383.

While Plaintiffs' argument has some superficial merit, it does nothing to undercut the fact that Defendant met its *prima facie* burden based on the record before the Court. Indeed, the best Plaintiffs do on this issue is to raise conclusory assertions that, in sum, the dissemination must be too wide if 310 people can access the database. But it seems beyond question that the communications at issue began as confidential attorney-client communications sent form outside counsel to Defendant, about pending litigation, and for the purpose of Defendant obtaining legal advice. Those communications were then placed within Defendant's Loan Activity Notes database, a system accessible only to certain of Defendant's employees who were granted access via their user IDs. It appears from Ms. Greggerson's affidavit that the maintenance of the Loan

---

[6] Plaintiffs admitted into evidence at the hearing Defendant's responses to an interrogatory admitting as much. *See* Doc. 89-1 at 1.

Activity Notes was a regular part of Defendant's efforts to litigate the many actions in which it was involved throughout the country. Thus, the fact that 310 of Defendant's employees had authorized access to that system, standing alone, does not upend the *prima facie* case that Defendant has established; especially where, as here, Defendant is a large financial institution that, due to its corporate structure, may have many employees spread throughout the country who need to know the status of the litigation or contents of the communications at issue. Further, as is apparent from Defendant's answer to the interrogatory, the 310 persons identified may include former employees who no longer have access to the database, so the actual number of employees having access at any one time may be significantly lower.

Finally, the undersigned has conducted an *in camera* review of both PETERSON0365 and the attachment to the email from outside counsel to Defendant that is the genesis of PETERSON0365. The information within PETERSON0365 is a word-for-word copy of the communication from outside counsel in the attachment to the email. Based on the undersigned's *in camera* review, the redacted portion of PETERSON0365 should be protected by both the attorney-client and work-product privileges. And this should be no surprise to Plaintiffs, who rightfully and immediately recognized this information as being subject to privilege and contacting Defendant's counsel within days of the inadvertent disclosure.

        c. <u>*There is a Possibility that the Receiving Party Obtained an Unfair Advantage*</u>

Having found that Plaintiffs waived their right to challenge Defendant's assertion of privilege and, in the alternative, that Defendant's met their burden to establish privilege, the undersigned turns to whether there is a possibility that Plaintiffs obtained an unfair advantage. In considering this issue, one court reasoned as follows:

> While recognizing that disqualification of a party's chosen counsel is an extraordinary remedy and should be resorted to sparingly, we believe the prudent

course in this case is to disqualify counsel. Like so many other ethical considerations in the practice of law, perceptions are of the utmost importance. Thus, how much of an advantage, if any, one party may gain over another we cannot measure. However, the possibility that such an advantage did accrue warrants resort to this drastic remedy for the sake of the appearance of justice, if not justice itself, and the public's interest in the integrity of the judicial process.

*Abamar II*, 724 So. 2d at 573–74 (quoting *Gen. Accident Ins. Co. v. Borg–Warner Acceptance Corp.*, 483 So. 2d 505, 506 (Fla. 4th Dist. Ct. App. 1986)).  Here, there is not simply a possibility of an unfair informational advantage, that advantage was acted upon.  Indeed, it is established that Plaintiffs used the sequestered materials to obtain an advantage by including the information from those materials in filing their Amended Complaint.  Further, by placing some of the privileged information into the public sphere,[7] they have caused lasting harm to Defendant.  Thus, the undersigned finds that no lesser sanction than disqualification would suffice.[8]

A remaining issue is whether all counsel should be disqualified or only certain counsel. The undersigned recommends that counsel from CLO (Mr. Newhart and Mr. Card) and Mr. Wooten (who is admitted *pro hac vice* with Mr. Newhart as local counsel) should be disqualified. The attorneys from CLO appear to have reviewed and used the sequestered information to gain an advantage in this case, and Mr. Wooten is admitted in this District under their supervision.  As to Mr. Shaw, he has repeatedly assured the Court that he has not reviewed the sequestered materials

---

[7] While the information placed in the public sphere is harmful and resulted in an unfair advantage, the sequestered materials, and PETERSON0365 in particular, contain additional, privileged information that could be used to gain a further, unfair informational advantage.  Thus, disqualification of counsel is necessary to avoid other harms that have not yet occurred.

[8] While it also appears that the privileged information contained within the sequestered materials may have made its way into the underlying state court litigation – whether through communication to some other person or simply through the involvement of Mr. Card and Mr. Newhart in that litigation – the undersigned is not making any recommendations concerning that issue at this time as the record simply does not support the Court taking further action as to that portion of Defendant's allegations.

and he, like any other attorney who would come into this case on behalf of Plaintiffs, has been exposed to only portions of those materials through the public filings in this litigation. Accordingly, it is recommended that Mr. Shaw be permitted to remain as counsel of record in this case, a result which will also lessen the burden upon Plaintiffs caused by the action of their counsel.

Finally, in conjunction with disqualification, the undersigned respectfully recommends that Mr. Newhart and Mr. Card bear the cost of the litigation surrounding their disqualification. The parties should be directed to confer and, if the parties cannot determine the appropriate amount, Defendant should be directed to file a motion to quantify. This sanction should be imposed pursuant to the Court's inherent authority and is based upon counsel's conduct, which is tantamount to bad faith; a finding predicated upon counsel's use of the sequestered materials despite the representations counsel made to the Court and opposing counsel, as well as the dissonance between the written response to the Motion (denying the use of the sequestered materials) and what Mr. Card admitted at the hearing.[9]

### IV. Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Motion (Doc. 76) be **GRANTED in part** such that:

    a. attorneys Darren Newhart, J. Dennis Card, Jr., and Nicholas Heath Wooten be disqualified as counsel in this case;

    b. paragraph 157 be stricken from the Amended Complaint; and

    c. attorneys Darren Newhart and J. Dennis Card, Jr. bear the cost incurred by Defendant of the litigation surrounding their disqualification;

---

[9] The recommendation to disqualify counsel is also based upon and supported by the Court's inherent authority to sanction the parties and counsel and to regulate the conduct of counsel who appear before the Court.

2. The Motion (Doc. 76) be **DENIED** in all other respects.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on January 24, 2019.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy