# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

DONALD A. PETERSON and LORI
HILDMEYER,

        **Plaintiffs,**

v.                                        **Case No:  6:18-cv-84-Orl-31DCI**

PNC BANK, N.A.,

        **Defendant.**

_____

## ORDER

    This matter comes before the Court without a hearing on the Motion to Dismiss (Doc. 73)

filed by the Defendant, PNC Bank, N.A. (henceforth, "PNC Bank"), and the response in

opposition (Doc. 75) filed by the Plaintiffs, Donald Peterson and Lori Hildmeyer.

### I.      Background

    According to the allegations of the First Amended Complaint (Doc. 65), which are taken in

pertinent part as true for purposes of resolving this motion, the Plaintiffs took out a mortgage in

2007 on their home in Oviedo, Florida.   (Doc. 65 at 2).   The mortgage holder was National City

Mortgage, a division of National City Bank.   (Doc. 65 at 2).   Originally, PNC Bank was just the

mortgage servicer; however, in 2008 PNC Bank acquired National City Bank.   (Doc. 65 at 2-3).

    Prior to that acquisition, National City Mortgage, contending that the Plaintiffs were

delinquent on their mortgage payments, retained an attorney to file a foreclosure suit.   (Doc. 65 at

3).   The foreclosure was filed in December 2008 (after the acquisition).   (Doc. 65 at 3).   The



Plaintiffs denied having fallen behind on their payments but "reinstated" the mortgage.[1] (Doc. 65 at 4). In January 2009, PNC dismissed the suit. (Doc. 65 at 4).

Beginning in 2009 and continuing sporadically through much of 2010, PNC began holding some mortgage payments in a suspense account rather than applying them to the mortgage -- apparently due to a dispute over whether the Plaintiffs were maintaining sufficient insurance coverage. (Doc. 65 at 4-6). In September 2011, an attorney filed a second foreclosure suit on behalf of PNC Bank, alleging that the Plaintiffs had stopped making mortgage payments in September 2010. (Doc. 65 at 13-14). The Plaintiffs contend that, as of the date when the second foreclosure was filed, all of their payments had been made and they were not in default. (Doc. 65 at 14). They defended the suit which, in February 2103, was dismissed. (Doc. at 16).

In March 2014, PNC Bank filed another foreclosure suit (the "Third Foreclosure") in state court, this time alleging that the Plaintiffs had not made a payment since February 2011. (Doc. 65 at 19). The Plaintiffs disputed this, attaching to their answer images of their mortgage payments through August 2011, which PNC Bank had deposited. (Doc. 65 at 19). They also disputed a number of fees that PNC Bank contended that they owed. Plaintiffs' attorney notified PNC Bank that the Plaintiffs were represented by counsel and sent multiple written requests for information and notice of error to PNC Bank. (Doc. 65 at 19). Despite this, PNC Bank sometimes contacted the Plaintiffs directly and failed to correct accounting errors and erroneously imposed fees. (Doc. 65 at 19-27). The Third Foreclosure remains pending.[2]

---

[1] The Plaintiffs do not explain what they were required to do to reinstate the mortgage.

[2] The docket in that case shows that one day of trial was held on September 12, 2018; the remainder of the trial has been continued until April 24, 2019.

On January 17, 2018, the Plaintiffs filed this suit, asserting claims for intentional infliction

of emotional distress; wrongful foreclosure; libel; violations of the Florida Consumer Collection

Practices Act ("FCCPA"), Fla. Stat. § 559.55 *et seq.*; and the Real Estate Settlement Procedures

Act ("RESPA"), 12 U.S.C. § 2605(i)(3).   On July 12, 2018, the Plaintiffs filed the Amended

Complaint (Doc. 65).   In it, they assert the following claims: intentional infliction of emotional

distress (Count I); constructive fraud (Count II); violations of the FCCPA (Counts III[3] and IV[4]);

and violations of RESPA (Count V).

PNC Bank contends that the Amended Complaint is based on facts that are parallel to the

facts at issue in the Third Foreclosure, and as a result this Court should either dismiss or stay this

case based on the abstention doctrines of *Younger v. Harris*, 401 U.S. 37 (1971) or *Colorado

River Water Conservation District v. United States*, 424 U.S. 800 (1974).   PNC Bank also

contends that it is protected by Florida's litigation privilege and that the Amended Complaint fails

to state a viable claim.   Because the Court finds that abstention is appropriate under *Colorado

River*, the remaining contentions will not be addressed.

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim

showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the

claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103,

2 L.Ed.2d 80 (1957), *overruled on other grounds, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

---

[3] Count III is based on Fla. Stat. § 559.72(9), which prohibits, among other things,
attempting to collect a debt that the collector knows to be illegitimate.

[4] Count IV is based on Fla. Stat. § 559.72(18), which generally prohibits debt collectors
from communicating with debtors that they know to be represented by counsel with regard to the
debt at issue.

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).   A Rule 12(b)(6) motion to dismiss for failure to state a

claim merely tests the sufficiency of the complaint; it does not decide the merits of the case.

*Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984).   In ruling on a motion to dismiss,

the Court must accept the factual allegations as true and construe the complaint in the light most

favorable to the plaintiff.   *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988).   The

Court must also limit its consideration to the pleadings and any exhibits attached thereto.   Fed. R.

Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the

speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the

required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007).   Conclusory

allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not

prevent dismissal.   *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme

Court explained that a complaint need not contain detailed factual allegations, "but it demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation.   A pleading that offers

labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.

Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."

*Id.* at 1949 (internal citations and quotations omitted).   "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –

but it has not 'show[n]' – 'that the plaintiff is entitled to relief.'"   *Id.* at 1950 (quoting Fed. R.

Civ. P. 8(a)(2)).

### III.   Analysis

The *Colorado River* abstention doctrine "addresses the circumstances in which federal

courts should abstain from exercising their jurisdiction because a parallel lawsuit is proceeding in

one or more state courts." *Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1327

(11th Cir. 2004).   It applies when the federal and state proceedings involve substantially the same

parties and substantially the same issues.  *Id.* at 1330.   However, such similarity is not enough,

on its own, to warrant abstention by the District Court.  "Generally, as between state and federal

courts, the rule is that the pendency of an action in the state court is no bar to proceedings

concerning the same matter in the Federal Court having jurisdiction."  *Colorado River*, 424 U.S.

at 817.   Federal courts have a "virtually unflagging" obligation to exercise the jurisdiction given

them, and therefore they can abstain to avoid duplicative litigation with state courts only in

exceptional circumstances.  *Id.* at 817-18.

### *Are the lawsuits parallel?*

The parties are the same in both this case and the state case.   PNC Bank spends several

pages of its motion detailing how, in its words, "the factual basis of the Amended Complaint is not

just parallel, but rather identical to the defenses that have been raised in" the Third Foreclosure.

(Doc. 73 at 10).   Generally speaking, in the instant case the Plaintiffs argue that they were never

in default, and that PNC Bank committed torts and violated state and federal law by misapplying

their payments, improperly imposing fees (many arising from the claimed defaults), and

wrongfully attempting to foreclose on their home.   PNC Bank contends that these claims are

identical to defenses raised by the Plaintiffs in the Third Foreclosure.   (Doc. 73 at 10).   Upon

review of the complaint in the Third Foreclosure, the Court finds this to be true.   The Plaintiffs'

second affirmative defense in that case, for example, contradicts PNC Bank's allegation that the

Plaintiffs failed to make their March 2011 mortgage payment and all subsequent payments.   And

the Plaintiffs' third affirmative defense is that PNC Bank has unclean hands due to its allegedly

wrongful imposition or exaggeration of mortgage- and foreclosure-related fees.

For their part, the Plaintiffs argue that there is "substantial doubt" that the proceedings are parallel. However, they offer only a vague assertion that the Amended Complaint is based on "allegations of servicing misconduct that are unrelated to the underlying foreclosure." (Doc. 75 at 8-9). They fail to provide any examples of issues due to be resolved in this case that are not already part of the Third Foreclosure. Accordingly, the Court finds the cases to be parallel.

### *Is abstention permissible?*

In interpreting *Colorado River*, the United States Court of Appeal for the Eleventh Circuit has recognized six factors that must be weighed in analyzing the permissibility of abstention in favor of a parallel state proceeding:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

*Ambrosia Coal* at 1331 (citing *American Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 884 (11th Cir.1990)). In addition, in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n. 20 (1983), the Supreme Court remarked that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River.*"

No one of these factors is necessarily determinative, and the weight to be given to any one factor may vary greatly from case to case. *Ambrosia Coal* at 1332. The factors must be considered flexibly and pragmatically, not as a "mechanical checklist," and the abstention inquiry must be "heavily weighted in favor of the exercise of jurisdiction." *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16).

### *Assumption of jurisdiction over property*

In this case, the parties agree that the state court has assumed jurisdiction over the Plaintiffs' home in the Third Foreclosure.  The Plaintiffs argue that this fact is not entitled to any weight in assessing the permissibility of abstention, as the instant case, unlike the state case, is not a proceeding *in rem*.  In support, they cite *Hamilton v. Suntrust Mortg., Inc.*, 6 F.Supp.3d 1300, 1306 (S.D. Fla. 2014).  In that case, the District Court found that it should not abstain from hearing the homeowner's claim, which involved forced-placed insurance, in favor of a state court foreclosure case in which the forced-placed insurance claim had been asserted as a counterclaim.  In analyzing the *Colorado River* factors, the federal court concluded that the state court's assumption of jurisdiction over the res did not favor abstention, because the federal proceedings merely sought damages and did not implicate title to the property.  *Id.* at 1306.

It is true that title to the Plaintiffs' home is not at issue in this case.  However, unlike the situation in *Hamilton*, the issues in this case overlap with the *in rem* action.  The Plaintiffs' primary contention in the instant case – *i.e.*, that they were never in default – must necessarily be addressed in the foreclosure proceeding, raising the specter of contradictory conclusions by the two courts as to the merits of the foreclosure.  *See, e.g., St. Clair v. Wertzberger*, 637 F.Supp.2d 251, 255 (D. N.J. 2009) (possibility of determining, in Fair Debt Collection Practices Act case, that foreclosure had been improperly instituted, warranted *Colorado River* abstention in favor of state foreclosure suit).  The Court therefore finds that this factor weighs in favor of abstention.

### *Inconvenience of the federal forum*

The state court proceedings are being held in Seminole County, where the Plaintiffs' home is located, while this court sits in Orange County.  The difference between these two locations is so slight that the Court finds that this factor does not weigh in favor of abstention.

### *Potential for piecemeal litigation*

The risk of piecemeal litigation is significant here, as this case and the Third Foreclosure involve substantially (if not entirely) the same issues.  Thus, this court and the state court could reach conflicting opinions on identical issues, which could "cause unwarranted friction between state and federal courts, a result which is obviously undesirable and avoidable in this instance." *Spectra Commc'ns Grp., LLC v. City of Cameron, Mo.*, 806 F.3d 1113, 1121 (8th Cir. 2015) (quoting *Employers Ins. of Wausau v. Missouri Elec. Works, Inc.*, 23 F.3d 1372, 1375 (8th Cir.1994), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)).  This factor weighs in favor of abstention.

### *The order in which the fora obtained jurisdiction*

The state court obtained jurisdiction over this dispute nearly four years before the instant case was filed, giving the state litigation priority.  The state case is also significantly more advanced, having already gone through its first day of trial, while this case has not even reached the summary judgment stage.  This factor weighs in favor of abstention.

### *Whether state or federal law will be applied*

The instant case involves one federal claim – the Plaintiffs' RESPA claim.  The Supreme Court has stated that the presence of federal-law issues "must always be a major consideration weighing against surrender" of jurisdiction by the federal court under *Colorado River*.  *Moses H. Cone*, 460 U.S. at 26.  Accordingly, this factor weighs in favor of retention of jurisdiction.

### *Adequacy of state court to protect the parties' rights*

The Plaintiffs do not contend that the state court cannot protect their rights.  The Court finds that this factor is neutral.

*Vexatious or reactive litigation*

Although PNC Bank contends that the instant suit was filed as a reaction to the foreclosure proceedings, it provides no support for this contention.   The Court finds that this factor is neutral.

*Conclusion*

Thus, four of the *Colorado River* factors weigh in favor of abstention, and only one weighs in favor of retention of jurisdiction.   That latter factor – *i.e.*, the presence of a federal law issue – is a major consideration.   But as the Supreme Court has noted, no one factor is determinative in assessing whether abstention is appropriate.   *Colorado River*, 424 U.S. at 818.   With this in mind and given that the state proceedings are already partway through trial, the Court finds that abstention is appropriate here.   In this circuit, a stay, rather than dismissal, is the proper procedural mechanism to employ when deferring to a parallel state-court proceeding under *Colorado River*.   *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 998 (11th Cir. 2004).   Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Motion to Dismiss (Doc. 73) filed by the Defendant, PNC Bank, N.A., is **GRANTED**, and this action is hereby **STAYED** pending resolution of the state court foreclosure proceedings.   And it is further

**ORDERED** that, beginning on April 25, 2019, and every three months thereafter, the Defendant shall file a brief status report regarding the state court proceedings.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 22, 2019.

GREGORY A. PRESNELL
**UNITED STATES DISTRICT JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DONALD A. PETERSON and LORI
HILDMEYER,

           Plaintiffs,

v.                                    Case No:  6:18-cv-84-Orl-31DCI

PNC BANK, N.A.,

           Defendant.

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration following oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL AND FOR SANCTIONS AGAINST PLAINTIFFS' COUNSEL (Doc. 76)** |
| **FILED:** | **October 4, 2018** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part.**

### I.   Introduction

While the background of this matter may be fairly lengthy, the issue at hand is straightforward, and Plaintiffs' counsel's conduct is inexcusable. Defendant produced discovery materials to Plaintiffs and, in doing so, made an inadvertent disclosure of unredacted materials over which Defendant intended to assert privilege. Plaintiffs' counsel, recognizing that the materials may contain attorney-client privileged communications, immediately informed Defendant of the potential inadvertent disclosure. In email communications with Defendant's

counsel, Plaintiffs' counsel promised to sequester the materials, although Plaintiffs disputed whether the materials were actually privileged. This matter came to the Court's attention and, at a hearing, the Court discussed the procedure the Court would utilize to determine the question of privilege as to the sequestered materials and provided a deadline for Defendant to file a motion for protective order. At that same hearing, Plaintiffs' counsel assured the Court that the materials would remain sequestered until the Court determined the issue of privilege. But then, inexplicably, Plaintiffs' counsel used the sequestered materials in filing the Amended Complaint; a fact now undisputed but initially unrealized by Defendant or the Court and then denied by Plaintiffs once discovered.

When Defendant properly moved for a protective order – arguing explicitly that the sequestered materials were privileged – it did not realize Plaintiffs' counsel's transgression. And when Plaintiffs' counsel failed to respond to that motion (despite an extension of Plaintiffs' deadline to respond), the Court granted the motion for protective order as unopposed and directed Plaintiffs' counsel to destroy the sequestered materials – again, not realizing that Plaintiffs had already used those materials in a public filing. The Court's order that Plaintiffs' counsel destroy the sequestered materials should have ended the matter. But Defendant eventually became aware of the use of the sequestered materials and filed a motion for disqualification and for sanctions against Plaintiffs' counsel; the awareness possibly due to Plaintiffs' counsel in this case sharing the information contained within the sequestered materials with Plaintiffs' attorney in the underlying state court foreclosure action, where that attorney referenced the information contained within the sequestered materials. Doc. 76 (the Motion).

In Plaintiffs' response to the Motion, Plaintiffs' counsel repeatedly denied the "specious" allegation that Plaintiffs' counsel used the sequestered materials in the Amended Complaint. But

at the hearing on the Motion, ***Plaintiffs' counsel explicitly admitted using the sequestered materials in drafting the Amended Complaint***, flatly refuting the assertions in the very response to the Motion; although the attorney who may be personally at fault failed to appear at the hearing.

The undersigned is hard-pressed to envision a more clear-cut violation of Federal Rule of Civil Procedure 26(b)(5)(B), which violation has been compounded by Plaintiffs' counsel's representations to the Court and opposing counsel. Accordingly, for the reasons stated in this Report, it is respectfully recommended that certain of Plaintiffs' counsel be disqualified, the portions of the Amended Complaint derived from the sequestered materials be stricken, and certain of Plaintiffs' counsel bear the cost of the litigation related to this matter.

## II.    Procedural and Factual Background

In March 2014, Defendant initiated a state court foreclosure action concerning Plaintiffs' residence in circuit court in Seminole County, Florida. That action remains pending.

On January 17, 2017, Plaintiffs filed this federal action against Defendant, invoking this Court's federal question and supplementary jurisdiction by raising a claim pursuant to the Real Estate Settlement Procedures Act (RESPA) (Count VI) and five state law claims (Counts I through V). Doc. 1. All the claims are related to allegations that the aforementioned state court foreclosure action is wrongful.

Discovery commenced, and, on May 29, 2018, Defendant served a supplemental production to Plaintiffs in response to Plaintiffs' first set of discovery. That supplemental production included an unredacted copy of Defendant's Loan Activity Notes (also referred to in this Report as the "sequestered materials").

On May 31, 2018, Plaintiffs' counsel, Attorney Darren Newhart of the Consumer Law Organization, P.A. (CLO), emailed Defendant's counsel and stated that the newest production, i.e.

the Loan Activity Notes, may contain an inadvertent production of attorney-client privileged

material. Specifically, Mr. Newhart stated as follows:

> Good afternoon. While reviewing Defendant's supplemental production, it appears
> there may have been an inadvertent disclosure of attorney/client privilege material,
> although no privilege log was filed with the production. I know you e-mailed me
> last Friday and indicated you were reviewing the documents for attorney/client
> privilege material, but I just want to err on the side of caution before proceeding.
> Please review and let me know if any information is attorney/client privileged.

Doc. 68-1. Other of Plaintiffs' counsel were on this email, including Attorneys J. Dennis Card, Jr.

of CLO and Jordan A. Shaw of Zebersky & Payne, LLP.

Within an hour on that same date, Defendant's counsel explained to Mr. Newhart that there

was a technical error on Defendant's end concerning the production, requested that the Loan

Activity Notes sent to Plaintiffs be destroyed, and stated that the "correct" (i.e. redacted)

documents would be immediately forwarded to Plaintiffs. *Id.* On June 1, 2018, Plaintiffs counsel

received a hard copy of the redacted Loan Activity Notes via FedEx, along with another request

for Plaintiffs to destroy the inadvertently produced unredacted Loan Activity Notes. Doc. 68-2.

On June 1, 2018, the parties held two telephone calls and exchanged several emails

concerning the inadvertent production. *See, e.g.,* Docs. 88-3 through 88-7. In sum, Plaintiffs'

counsel refused to destroy the unredacted Loan Activity Notes, asserted that privilege had been

waived through the inadvertent disclosure, and intended to raise the matter with the Court. *See id.*

But most importantly, Attorney Newhart made the following promise that, pursuant to Federal

Rule of Civil Procedure 26(b)(5)(B), he had and would continue to sequester the unredacted Loan

Activity Notes pending a determination by the Court as to Defendant's claims of privilege:

> Good morning. Plaintiffs will be filing a motion under Rule 26 and Local Rule 1.09
> asking the Court to perform an in camera review of certain entries in the servicing
> log to determine if the information is privileged or protected, and whether that
> privilege or protection was waived. It is our position that certain entries in the
> servicing log are not covered by any privilege or protection. ***As required under***

> *Rule 26, the information was sequestered until the Court makes the determination.* . . .

Doc. 88-4 at 4 (emphasis added).

Over the next few days, Defendant provided a privilege log to go with the redacted Loan Activity Notes and Plaintiffs took issue with the sufficiency of that privilege log. On June 5, 2018, this culminated in Plaintiffs filing a motion for leave to file the sequestered materials under seal so that the Court could conduct an *in camera* review pursuant to Rule 26(b)(5)(B). Doc. 43 (the Motion to Seal). In the Motion to Seal, Plaintiffs explicitly requested "the Court to review certain information to confirm that it is not subject to attorney-client privilege or work-product protection. Federal Rule of Civil Procedure 26(b)(5)(B) applies because the information was inadvertently produced to Plaintiffs' counsel, Consumer Law Organization, P.A., in unredacted form." *Id.* at 1. In the Motion to Seal, Plaintiffs' counsel explained that during a review of the unredacted Loan Activity Notes on May 31, 2018, counsel "felt that the entries may contain some privileged or protected information" so they alerted Defendant to the potential inadvertent disclosure and "sequestered the unredacted information pending the Court's review." *Id.* at 3-5.

On June 12, 2018, the Court held a hearing on an unrelated motion to quash a subpoena. Doc. 47. Mr. Newhart appeared at that hearing for Plaintiffs. Following the Court's determination of the motion to quash, the parties raised the issue of the Motion to Seal. Doc. 54 at 21-26. Mr. Newhart presciently expressed concern that a motion to disqualify may be filed against him some time in the future due to an "informational advantage" he may have obtained from reviewing the sequestered materials, and concluded by explaining his purpose in filing the Motion to Seal:

> One, in that the defendants don't want to further give away privilege. And, two, you know, myself, we don't want to -- I don't want to have an issue where later on down the line a motion to disqualify is filed because, you know, something was seen or wasn't seen or whatever, you know, whatever it may be.

> And so that's the reason that we're operating under Rule 26 and why we tried to file
> it as quickly as possible.

*Id.* at 23-24.[1]  The Court then discussed with the parties that the materials would remain

sequestered, the parties should confer further concerning their dispute, and, barring a resolution,

the Court would deny the Motion to Seal and direct the parties to further brief the issue of the

applicability of privilege to the sequestered materials. *Id.* at 24-26.  Thus, on June 19, 2018, the

Court entered an order denying the Motion to Seal and directing as follows:

> On or before June 26, 2018, Defendant shall provide to Plaintiff a privilege log that
> fully complies with the undersigned's standing order regarding the procedure for
> the assertion of privilege (the Standing Order). Then, on or before July 3, 2018, the
> parties shall confer in a good faith effort to resolve the dispute without the need for
> court intervention. *See* Fed. R. Civ. P. 26(c)(1); Local Rule 3.01(g). Finally, on or
> before July 17, 2018, Defendant, to the extent necessary, shall file a motion for
> protective order in accordance with the undersigned's Standing Order.

Doc. 51.

On July 5, 2018, the Court held a hearing on an unrelated motion to compel. Docs. 44; 62.

At that hearing, Mr. Newhart appeared for Plaintiffs.

On July 12, 2018, Plaintiffs filed an Amended Complaint.  Doc. 65.  Among other new

allegations – and particularly relevant to the Motion before the Court – the Amended Complaint

contained paragraph 157, which read as follows: "Unsurprisingly, on or about February 4, 2016,

PNC's research revealed that the Petersons never defaulted under the Mortgage." *Id.* at 22.

On July 20, 2018 (having received a brief extension), Defendant filed its Motion for

Protective Order, seeking, among other relief, destruction of the sequestered materials. Doc. 68.

In particular, a document within the sequestered materials with Bates number PETERSON0365

had become a focus of the parties during the conferral process, with Defendant asserting privilege

---

[1] In the transcript, this portion is erroneously attributed to Defendant's counsel.

over that document and Plaintiffs disputing that claim of privilege. In addition, Defendant attached

to the Motion for Protective Order an affidavit from Sarah Greggerson, an officer of Defendant.

Doc. 68-5 (the Greggerson Affidavit). According to Ms. Greggerson, Defendant maintained Loan

Activity Notes in the course of its business, including in relation to the loan at issue in this

litigation, and certain of the sequestered materials (identified by Bates number) included Loan

Activity Notes that documented communications between Defendant and outside law firms

retained to represent Defendant concerning the litigation surrounding Plaintiffs' loan, which

communications Ms. Greggerson described as follows:

> 14.    I have reviewed the Loan Activity Notes produced by PNC in this litigation,
> Bates Stamped PETERSON023 - PETERSON0555. Each of the redacted entries
> are: (1) direct communication from outside counsel related to litigation; (2) a copy
> and paste of communication received from outside counsel related to litigation; (3)
> a summarization of communication to and/or from outside counsel related to
> litigation; and/or (4) research prepared for outside counsel in the course of legal
> representation or in preparation of litigation.

> 15.    For example, the information contained in the single redacted entry on
> PETERSON0365 was received via e-mail by PNC from its counsel, McGlinchey
> Stafford, on or about January 29, 2016. This e-mail correspondence received from
> McGlinchey Stafford, which reflect the impressions of PNC's counsel and status of
> the ongoing foreclosure litigation, was directly copied and pasted into MSP by the
> Default Litigation Clerk, Tina Adams a/k/a Tina Preston shortly after receipt of
> same.

Doc. 68-5 at 3. In the Motion for Protective Order, Defendant squarely argued that the sequestered

materials were subject to both the attorney-client and work-product privileges. Doc. 68 at 8-12.

On August 1, 2018, Plaintiffs filed a timely and unopposed motion for an extension of time

to respond to the Motion for Protective Order, and the Court granted the requested extension.

Docs. 71; 72. But Plaintiffs never responded to the Motion for Protective Order, so that motion

became unopposed. *See* Local Rule 3.01(b); Doc. 16 (the CMSO) at 5.

Thus, on August 9, 2018, the Court entered an Order granting in part the Motion for Protective Order. Doc. 74. In particular, the Court found that Defendant had not waived privilege by inadvertently disclosing the sequestered materials and directed Plaintiffs to destroy the sequestered materials, but "deem[ed] it unnecessary to rule on the applicability of the privilege as to each of the documents at issue." *Id.* at 2. Given the foregoing history of this litigation, the Court believed it was directing Plaintiffs to destroy documents that Plaintiffs had sequestered immediately upon receipt, so there was no need to also decide whether the documents were privileged.

On October 4, 2018, Defendant filed the Motion to Disqualify that is now before the Court. Doc. 76 (the Motion). In the Motion, Defendant asserts that Plaintiffs' counsel must be disqualified because they utilized the sequestered materials both in drafting the Amended Complaint and in relation to the underlying state court litigation. In particular, Defendant asserts that Plaintiffs utilized the information contained within PETERSON0365 – the only document in the sequestered materials containing a date of entry of February 4, 2016 – to draft the allegations in paragraph 157 of the Amended Complaint. According to Defendant, there could be no other source for the allegation in paragraph 157.

In response, Plaintiffs repeatedly denied using the sequestered materials in any manner whatsoever, going so far as to assert that: "[Defendant] makes the specious allegation that Plaintiffs' . . . used the document in its Amended Complaint. It did not." Doc. 78 at 5. Plaintiffs once again asserted that they sequestered the inadvertently disclosed unredacted Loan Activity Notes and "never disseminated the information" therein to counsel in the underlying foreclosure action. *Id.* at 6. In addition, Plaintiffs, for the first time in this litigation, sought to challenge Defendant's privilege log and Defendant's claims to privilege concerning the sequestered

materials – the exact issues raised in Defendant's Motion for Protective Order to which Plaintiffs failed to respond.

On November 14, 2018, the Court held a hearing on the Motion.  Plaintiffs were represented at the hearing by Mr. Card and Mr. Shaw, but Mr. Newhart failed to appear at the hearing.[2]  Doc. 87.  Most relevant to the Court's consideration of the Motion, Defendant admitted into evidence an email from Defendant's outside counsel to Defendant that acted as a cover letter for a spreadsheet that contained "monthly case status reports for the cases" that outside counsel were handling for Defendant in Florida and several other states.  Doc. 88-7.  This is the email referenced by Ms. Greggerson in her affidavit, and the attachment to this email was submitted for *in camera* review, without objection, as was PETERSON0365.  That attachment contains the text entry that was placed in the Loan Activity Notes, inadvertently disclosed to Plaintiffs as PETERSON0365, allegedly sequestered, and then utilized in drafting paragraph 157 of the Amended Complaint.

At the hearing, Plaintiffs' counsel admitted to using the information in PETERSON0365 in paragraph 157 of the Amended Complaint – a fact vehemently denied in their written response. In fact, when asked directly for the basis of the allegations contained in paragraph 157, Mr. Card told the Court that, "it absolutely comes from Peterson 365" and that it would be a "misrepresentation" to deny that fact.  Doc. 94-3 at 47, 49; *see id.* at 51 (Mr. Card: "That's where the information came from, Your Honor, was a review of 365.").  Without even a pretense of a

---

[2] Despite the purpose of the hearing (to disqualify counsel due to alleged misconduct), Mr. Newhart's central role in the alleged misconduct, and the fact that Mr. Newhart had attended every prior hearing in this case, Mr. Newhart chose not to attend the hearing.  Mr. Newhart had ample notice of the hearing and never sought to continue the hearing.  On the other hand, the hearing was continued once upon an unopposed request of Defendant.  At the hearing, Mr. Card represented that Mr. Newhart had pre-arranged, annual travel to New York but did not otherwise explain why Mr. Newhart failed to attend the hearing or seek to continue the hearing.

denial that Plaintiffs used the sequestered materials in drafting the Amended Complaint at a time when the materials were sequestered and, thus, with no other argument to make that would potentially prevent disqualification, Plaintiffs repeatedly argued that PETERSON0365 was not privileged. Incredibly, because the Court did not make a privilege finding when it ordered the sequestered materials destroyed, Plaintiffs' counsel seemingly felt they could use the materials: "But because the order did say specifically that Your Honor did not determine privilege, we felt that we were in an okay position to proceed forward."[3] Doc. 94-3 at 45. Plaintiffs' counsel also admitted that they failed to respond to the Motion for Protective Order due to a calendaring error but did not otherwise explain why they failed to seek reconsideration of the Court's order or seek leave to file a belated response. Doc. 94-3 at 44. Further, Mr. Shaw sought to distance himself from Mr. Newhart and Mr. Card of CLO, arguing as follows: "I did review the complaint as it was filed. I did make edits and help draft. But as to any information pertaining to the unredacted documents, I've not seen, used, or understand what is in those entries . . . ." Doc. 94-3 at 42; *see id.* at 53-54 (Mr. Shaw denied that his law firm ever received the sequestered materials), 76 (Mr. Card confirmed that neither Mr. Shaw nor Mr. Wooten reviewed the sequestered materials). Indeed, Mr. Shaw argued that, "even though sequestered information was used in a complaint while pending a determination of privilege, we believe that perhaps disqualification of all counsel is not the proper remedy." Doc. 94-3 at 62; *see id.* at 58-59 (Mr. Shaw requested that the Court not disqualify all three law firms when the focus appeared to be on Mr. Newhart), 65 (Mr. Shaw expressed his "hopes that in the event a counsel is disqualified, my firm can stay on."). Finally, Plaintiffs denied providing the sequestered materials to counsel in the underlying foreclosure

---

[3] This argument is not only substantively flawed but also based on an apparent misunderstanding of the timeline: the sequestered materials were used *prior* to the order that they be destroyed, and at a time when they were unequivocally sequestered.

action; according to Mr. Card, "The information was absolutely not used in the state court case, just to make that clear." Doc. 94-3 at 61. But Mr. Card's denials that he communicated information about the sequestered materials to counsel in the underlying state court foreclosure action must be squared with the fact that both Mr. Newhart and Mr. Card filed a notice of appearance in the state court foreclosure action on September 11, 2018 – thus infecting those proceedings with their knowledge of the sequestered materials flowing from this case. Doc. 88-2 (while the notice specifically identifies Mr. Newhart, both Mr. Card and Mr. Newhart filed the notice).

Following the hearing, on December 7, 2018, Defendant filed an authorized reply, in which Defendant asserted that Plaintiffs' counsel in the underlying state court foreclosure litigation had filed a motion to compel documents from Defendant that are directly at issue in this federal case – including the sequestered materials. Doc. 94. Thus, according to Defendant, the informational advantage obtained by Mr. Card and Mr. Newhart is having real consequences for Defendant not only in this action, but also the state court foreclosure action.

On December 18, 2018, Plaintiffs filed an authorized sur-reply. Doc. 97. In the sur-reply, Plaintiffs solely argue that the sequestered materials, and PETERSON0365 in particular, are not privileged. According to Plaintiffs, "every court to address the issue requires the party withholding information under a claim of privilege to make a *prima facie* showing that the privilege applies." *Id.* at 2.

### III.   Discussion

#### a.   *Legal Standard*

A court in this District recently and succinctly summarized the law in this area in a case cited to and relied upon by both parties:

Under Florida law:

> [t]he receipt of an inadvertent disclosure warrants disqualification when the movant establishes that: (1) the inadvertently disclosed information is protected, either by privilege or confidentiality; and (2) there is a "possibility" that the receiving party has obtained an "unfair" "informational advantage" as a result of the inadvertent disclosure. These two elements are, of course, interrelated, because only the inadvertent disclosure of privileged or confidential information can yield an "unfair" "informational advantage." However, the fact that the inadvertently disclosed information is privileged or confidential, standing alone, does not automatically warrant disqualification.

*Moriber v. Dreiling*, 95 So. 3d 449, 454 (Fla. 3d Dist. Ct. App. 2012) (citing *Atlas Air, Inc. v. Greenberg Traurig, P.A.*, 997 So. 2d 1117, 1118 (Fla. 3d Dist. Ct. App. 2008) and *Abamar Hous. & Dev., Inc. v. Lisa Daly Lady Décor, Inc.*, 724 So. 2d 572, 573–74 & n. 4 (Fla. 3d Dist. Ct. App. 1998) ("*Abamar II*") ). Nonetheless, the party seeking disqualification does not need to establish specific prejudice in order to justify disqualification. *Abamar II*, 724 So. 2d at 573 (citing *Junger Util. & Paving Co., Inc. v. Myers*, 578 So. 2d 1117, 1119 (Fla. 1st Dist. Ct. App. 1989), and *Zarco Supply Co. v. Bonnell*, 658 So. 2d 151, 154 (Fla. 1st Dist. Ct. App. 1995)) ).

To determine whether receiving counsel possibly gained an unfair informational advantage, courts look at the content of the inadvertent disclosure and the actions taken by the receiving lawyers upon their receipt of the inadvertent disclosure. *Moriber*, 95 So. 3d at 454 (citing *Atlas Air, Inc.*, 997 So. 2d at 1118). Courts reason that "it would be impossible to determine whether there is a possibility that the receiving attorneys obtained an unfair informational advantage without knowing how and to what extent they reviewed, copied, or disseminated the inadvertent disclosure." *Id.* (citing *Atlas Air, Inc.*, 997 So. 2d at 118–19). Additionally, courts note that "the actions of the receiving attorneys shed light on whether any informational advantage was obtained 'unfairly.'" *Id.* at 455 (quoting *Abamar II*, 724 So. 2d at 574 n. 4, and *Morse v. Clark*, 890 So. 2d 496, 497 (Fla. 5th Dist. Ct. App. 2004) ).

An attorney who promptly notifies the producing party of the inadvertent disclosure of privileged and protected documents and immediately returns the inadvertently produced documents without exercising any unfair advantage will not be subject to disqualification. *Id.* (citing Rule 4–4.4(b) of the Rules Regulating the Florida Bar). Expanding this rationale to federal procedure, if an attorney complies with Federal Rule of Civil Procedure 26(b)(5)(B) without exercising any unfair advantage, disqualification would also not be appropriate.

> "The party moving for disqualification of counsel bears the burden of proving grounds for disqualification." *Bedoya*, 861 F. Supp. 2d at 1350 (quoting *Armor Screen Corp. v. Storm Catcher, Inc.*, 709 F. Supp. 2d 1309, 1310 (S.D. Fla. 2010)). Because a party is presumptively entitled to counsel of its choice, disqualification should be ordered only for compelling reasons. *Id.*

*Walker v. GEICO Indem. Co.*, No. 6:15-CV-1002-ORL-41KRS, 2016 WL 11234453, at *2–3 (M.D. Fla. Sept. 13, 2016), *report and recommendation adopted*, 2017 WL 1174234 (M.D. Fla. Mar. 30, 2017).

In *Walker*, the parties conferred and agreed that the moving party had "made a *prima facie* showing that the documents listed on the Final Privilege Log are privileged or protected, as claimed." *Id.* at *6. Thus, the magistrate judge considered whether disqualification was required and found that it was. In so finding, the court expressed concern that "[p]recluding use of the privileged and protected information cannot, however, erase it from the minds of counsel for [the defendant] or prevent [the defendant] from making strategic decisions in this case based on its knowledge of that information." *Id.* at *7. The defendant in *Walker* objected to that finding, and in rejecting that objection, the district court found that the moving party had "established a sufficient possibility that the [law firm who received the inadvertent disclosure] obtained an unfair informational advantage by reviewing the privileged or protected information . . . and therefore, the [law firm] must be disqualified." *Walker v. GEICO Indem. Co.*, No. 6:15-CV-1002-ORL-41KRS, 2017 WL 1174234, at *11 (M.D. Fla. Mar. 30, 2017).

### b. *The Inadvertently Disclosed Information is Protected*

Here, the primary argument by Plaintiffs in seeking to avoid disqualification is that the sequestered materials are not privileged. As an initial matter, the undersigned finds that such an argument is waived. Plaintiffs had an opportunity to litigate this issue in response to the Motion for Protective Order, but Plaintiffs failed to do so. They should not now have a second bite at the

apple. While the Court did not find it necessary to make a finding that the sequestered materials were privileged when it ordered them destroyed (exactly because the Court ordered those materials destroyed), Plaintiffs' lack of opposition to Defendant's claims of privilege over the exact same materials at an earlier stage of this litigation should bind Plaintiffs, and they should not be allowed to re-litigate the issue now that they face disqualification due to a clear transgression of the Rules governing this Court. What is most perplexing is that early on Mr. Newhart was fully cognizant of this issue and his corresponding responsibilities – he immediately recognized the inadvertent disclosure of privileged communications, reached out to Defendant and assured Defendant that the materials would be sequestered pending a judicial determination of privilege, and then even filed a motion (the Motion to Seal) seeking an appropriate *in camera* determination. But then, inexplicably, while the issue was pending before the Court, Plaintiffs' counsel chose to use the sequestered materials in drafting and filing the Amended Complaint. And then, when Defendant called out Plaintiffs for what they did (by filing the Motion), Plaintiffs denied their wrongdoing (in their response). Only when standing before the Court did Plaintiffs' counsel – with Mr. Newhart absent – admit what happened. The undersigned is hard-pressed to imagine a more clear-cut violation of Rule 26(b)(5)(B).

Regardless, the undersigned will also, as an alternative basis supporting this Report and Recommendation, address Defendant's claim of privilege over the sequestered materials. As Plaintiffs concede, the issue before the Court is whether Defendant has established a *prima facie* case that privilege applies. Keeping that standard in mind, the undersigned finds that Defendant has met its burden and established a *prima facie* case that privilege applies to the sequestered materials. Specifically, it appears that the inadvertently unredacted information contained within the sequestered materials, and in particular PETERSON0365, are the communications between

Defendant and its outside counsel concerning pending litigation. As is not unusual, Defendant's

outside counsel authored an email to Defendant that contained an attachment giving Defendant an

update on all pending cases in a particular region that outside counsel was handling for Defendant

at the time. This is established not only through the email itself (admitted into evidence at the

hearing) but also in Ms. Greggerson's affidavit and the attachment that the undersigned considered

*in camera.* It then appears that – at least as to Plaintiffs' loan – outside counsel's updates were

copied by an employee of Defendant into the Loan Activity Notes associated with Plaintiffs' loan

in Defendant's database system. That system was accessible only by certain of Defendant's

employees, an access control implemented through user IDs.

Plaintiffs truly take issue with only one aspect of Defendant's record-keeping system in

asserting that the sequestered materials lack privilege:[4] Plaintiffs assert that Defendant failed to

establish that the otherwise privileged information within the Loan Activity Notes did not lose its

privilege because it was too widely disseminated within Defendant's corporate structure.[5] In other

words, Plaintiffs asserted that because 310 of Defendant's employees had access to the Loan

Activity Notes (including approximately 20 employees who Defendant could not identify because

the user ID had been deleted), Defendant had not established that the Loan Activity Notes could

---

[4] Plaintiffs other arguments, such as the application of the crime-fraud exception, wholly lack merit and do not warrant any further discussion.

[5] Because this argument was raised for the first time in response to the Motion and because Defendant (justifiably, in the opinion of the undersigned) took the position that Plaintiffs waived their opportunity to litigate the privilege of the sequestered documents when they failed to respond to the Motion for Protective Order, the undersigned stated at the hearing that if the undersigned recommended denying the Motion on the basis that Defendant had failed to establish privilege, that the recommendation would be that the denial be without prejudice.

contain any privilege.[6] In support, Plaintiffs cited to *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d

1377, 1387 (Fla. 1994) (*Southern Bell*), which identified "the following criteria to judge whether

a corporation's communications are protected by the attorney-client privilege:"

> (1) the communication would not have been made but for the contemplation of
> legal services;
>
> (2) the employee making the communication did so at the direction of his or her
> corporate superior;
>
> (3) the superior made the request of the employee as part of the corporation's effort
> to secure legal advice or services;
>
> (4) the content of the communication relates to the legal services being rendered,
> and the subject matter of the communication is within the scope of the
> employee's duties;
>
> (5) the communication is not disseminated beyond those persons who, because of
> the corporate structure, need to know its contents.

*Id.* at 1383.

While Plaintiffs' argument has some superficial merit, it does nothing to undercut the fact

that Defendant met its *prima facie* burden based on the record before the Court. Indeed, the best

Plaintiffs do on this issue is to raise conclusory assertions that, in sum, the dissemination must be

too wide if 310 people can access the database. But it seems beyond question that the

communications at issue began as confidential attorney-client communications sent form outside

counsel to Defendant, about pending litigation, and for the purpose of Defendant obtaining legal

advice. Those communications were then placed within Defendant's Loan Activity Notes

database, a system accessible only to certain of Defendant's employees who were granted access

via their user IDs. It appears from Ms. Greggerson's affidavit that the maintenance of the Loan

---

[6] Plaintiffs admitted into evidence at the hearing Defendant's responses to an interrogatory
admitting as much. *See* Doc. 89-1 at 1.

Activity Notes was a regular part of Defendant's efforts to litigate the many actions in which it was involved throughout the country. Thus, the fact that 310 of Defendant's employees had authorized access to that system, standing alone, does not upend the *prima facie* case that Defendant has established; especially where, as here, Defendant is a large financial institution that, due to its corporate structure, may have many employees spread throughout the country who need to know the status of the litigation or contents of the communications at issue. Further, as is apparent from Defendant's answer to the interrogatory, the 310 persons identified may include former employees who no longer have access to the database, so the actual number of employees having access at any one time may be significantly lower.

Finally, the undersigned has conducted an *in camera* review of both PETERSON0365 and the attachment to the email from outside counsel to Defendant that is the genesis of PETERSON0365. The information within PETERSON0365 is a word-for-word copy of the communication from outside counsel in the attachment to the email. Based on the undersigned's *in camera* review, the redacted portion of PETERSON0365 should be protected by both the attorney-client and work-product privileges. And this should be no surprise to Plaintiffs, who rightfully and immediately recognized this information as being subject to privilege and contacting Defendant's counsel within days of the inadvertent disclosure.

c.   *There is a Possibility that the Receiving Party Obtained an Unfair Advantage*

Having found that Plaintiffs waived their right to challenge Defendant's assertion of privilege and, in the alternative, that Defendant's met their burden to establish privilege, the undersigned turns to whether there is a possibility that Plaintiffs obtained an unfair advantage. In considering this issue, one court reasoned as follows:

> While recognizing that disqualification of a party's chosen counsel is an extraordinary remedy and should be resorted to sparingly, we believe the prudent

> course in this case is to disqualify counsel. Like so many other ethical considerations in the practice of law, perceptions are of the utmost importance. Thus, how much of an advantage, if any, one party may gain over another we cannot measure. However, the possibility that such an advantage did accrue warrants resort to this drastic remedy for the sake of the appearance of justice, if not justice itself, and the public's interest in the integrity of the judicial process.

*Abamar II*, 724 So. 2d at 573–74 (quoting *Gen. Accident Ins. Co. v. Borg–Warner Acceptance Corp.*, 483 So. 2d 505, 506 (Fla. 4th Dist. Ct. App. 1986)). Here, there is not simply a possibility of an unfair informational advantage, that advantage was acted upon. Indeed, it is established that Plaintiffs used the sequestered materials to obtain an advantage by including the information from those materials in filing their Amended Complaint. Further, by placing some of the privileged information into the public sphere,[7] they have caused lasting harm to Defendant. Thus, the undersigned finds that no lesser sanction than disqualification would suffice.[8]

A remaining issue is whether all counsel should be disqualified or only certain counsel. The undersigned recommends that counsel from CLO (Mr. Newhart and Mr. Card) and Mr. Wooten (who is admitted *pro hac vice* with Mr. Newhart as local counsel) should be disqualified. The attorneys from CLO appear to have reviewed and used the sequestered information to gain an advantage in this case, and Mr. Wooten is admitted in this District under their supervision. As to Mr. Shaw, he has repeatedly assured the Court that he has not reviewed the sequestered materials

---

[7] While the information placed in the public sphere is harmful and resulted in an unfair advantage, the sequestered materials, and PETERSON0365 in particular, contain additional, privileged information that could be used to gain a further, unfair informational advantage. Thus, disqualification of counsel is necessary to avoid other harms that have not yet occurred.

[8] While it also appears that the privileged information contained within the sequestered materials may have made its way into the underlying state court litigation – whether through communication to some other person or simply through the involvement of Mr. Card and Mr. Newhart in that litigation – the undersigned is not making any recommendations concerning that issue at this time as the record simply does not support the Court taking further action as to that portion of Defendant's allegations.

and he, like any other attorney who would come into this case on behalf of Plaintiffs, has been exposed to only portions of those materials through the public filings in this litigation. Accordingly, it is recommended that Mr. Shaw be permitted to remain as counsel of record in this case, a result which will also lessen the burden upon Plaintiffs caused by the action of their counsel.

Finally, in conjunction with disqualification, the undersigned respectfully recommends that Mr. Newhart and Mr. Card bear the cost of the litigation surrounding their disqualification. The parties should be directed to confer and, if the parties cannot determine the appropriate amount, Defendant should be directed to file a motion to quantify. This sanction should be imposed pursuant to the Court's inherent authority and is based upon counsel's conduct, which is tantamount to bad faith; a finding predicated upon counsel's use of the sequestered materials despite the representations counsel made to the Court and opposing counsel, as well as the dissonance between the written response to the Motion (denying the use of the sequestered materials) and what Mr. Card admitted at the hearing.[9]

## IV.   Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Motion (Doc. 76) be **GRANTED in part** such that:

    a. attorneys Darren Newhart, J. Dennis Card, Jr., and Nicholas Heath Wooten be disqualified as counsel in this case;

    b. paragraph 157 be stricken from the Amended Complaint; and

    c. attorneys Darren Newhart and J. Dennis Card, Jr. bear the cost incurred by Defendant of the litigation surrounding their disqualification;

---

[9] The recommendation to disqualify counsel is also based upon and supported by the Court's inherent authority to sanction the parties and counsel and to regulate the conduct of counsel who appear before the Court.

2.  The Motion (Doc. 76) be **DENIED** in all other respects.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on January 24, 2019.

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DONALD A. PETERSON and LORI HILDMEYER,**

        **Plaintiffs,**

**v.**

**PNC BANK, N.A.,**

        **Defendant.**

Case No:   **6:18-cv-84-Orl-31DCI**

---

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Quantify Attorney's Fees and Costs (Doc. 109).   Plaintiffs' counsel responded to that motion (Doc. 112), and Defendant filed a Reply (Doc. 115).   On May 28-29, 2019, the Court held an evidentiary hearing on the matter, which is now ripe for decision.

### I.    Background

On October 4, 2018, Defendant filed a motion to disqualify Plaintiffs' counsel and for the imposition of sanctions (Doc. 76).   The motion grew out of an alleged violation of Federal Rule of Civil Procedure 26(b)(5)(B), which governs a party's obligations when the other side has inadvertently produced information subject to a claim of privilege.   On January 24, 2019, Magistrate Judge Irick issued a report in which he found that the conduct of Plaintiffs' counsel in utilizing the inadvertently produced material was inexcusable and recommending that Defendant's Motion be granted.   (Doc. 100 at 19). Specifically, Judge Irick recommended that Plaintiffs' three attorneys be disqualified and that two of them – Darren Newhart and J. Dennis Card – bear the costs incurred by Defendant in litigating this issue.[1]   (Doc. 100 at 19).   On May 8, 2019, the

---

[1]  Judge Irick recommended that this sanction be imposed pursuant to the Court's inherent

Court affirmed that report in part, finding that disqualification of Plaintiffs' third attorney, Nicholas Heath Wooten, was not warranted, but disqualifying Newhart and Card and ordering them to "bear the cost incurred by the Defendant in litigating the issue of their disqualification." (Doc. 118).[2]

On February 22, 2019, Defendant filed the instant motion, seeking to recover fees in the amount of $16,292.50, and costs of $599.05, representing the amounts incurred in connection with the disqualification issue through February 14, 2019. (Doc. 109-1). These fees and costs were supported by an affidavit of Defendant's counsel, with an attached summary of relevant time entries. Counsel's fee was calculated at $275 per hour for partner's time (Kim Israel) and $225 per hour for associate's time (Amy Kisz). On March 7, 2019, Plaintiffs' counsel filed a response (Doc. 112) to Defendant's motion for fees and costs. The first 12 pages of that 20-page response simply reiterated counsel's argument regarding the merits of disqualification; accordingly, the Court struck that portion of Plaintiffs' counsel's response. (Doc. 116). The balance of the response raised objections to portions of defense counsel's time entries. Defendant filed a reply (Doc. 115) on March 28, 2019, contending that all the time entries questioned by Plaintiffs' counsel were directly related to the disqualification issue.

On May 13, 2019, the Court issued an Order and Notice of Evidentiary Hearing (Doc. 120). That Order required the parties to file and exchange a list of witnesses, with a summary of their testimony, and a list of exhibits to be offered into evidence. (Doc. 120 at 1). On May 22, 2019, the parties complied with that Order.

---

authority. (Doc. 100 at 19). *See Chambers v. NASCO*, 501 U.S. 32, 43 (1991).

[2] Mr. Wooten has represented Newhart and Card in this proceeding.

Defendant's witness list included defense counsel and Bradley Luczak, an expert witness regarding the reasonableness of the attorney's fees incurred by Defendant in litigating the disqualification issue.  Defendant also filed a supplemental affidavit (Doc. 123) covering fees incurred from February 15, 2019 (the end date of the prior affidavit) to May 21, 2019.  (Doc. 123 at 4-11).  The additional time incurred totaled 62.5 hours, resulting in an (additional) fee request of $15,405.00.  (Doc. 123 at 2).  Finally, defense counsel estimated that they would spend a total of 11 hours preparing for and attending the evidentiary hearing, thereby incurring another $4,675.00 in fees.  (Doc. 123 at 2).  For their part, the exhibit and witness lists filed by Plaintiffs' counsel (Doc. 126) reflected no additional witnesses and listed only one exhibit.

The evidentiary hearing began on May 28 and extended into the next day.  At the hearing, Defendant introduced the testimony of Kim Israel and Amy Kisz, the primary lawyers representing Defendant in this proceeding.  They testified that the time entries at issue began on June 1, 2018, with a conversation between Ms. Israel and Plaintiffs' counsel regarding the inadvertent disclosure of documents that triggered this extraordinarily contentious dispute.  Ms. Israel explained that defense counsel used conservative billing judgment regarding the time entries included in the affidavits.  She further testified that the rates charged to PNC of $225 to $275 per hour are well below the firm's standard rates.  Ms. Kisz confirmed the accuracy of her affidavits and stated that the total amount sought by PNC was $36,971.55, which included costs of $599.05.

Defendant also called Mr. Luczak, a lawyer who has practiced in Central Florida since 1985, as an expert witness.  Mr. Luczak is board-certified in business litigation and specializes in real estate-related disputes.  He has served on a grievance committee as well as the arbitration committee of The Florida Bar, and has prior experience as an expert witness regarding reasonableness of attorney's fees.[3]  Mr. Luczak testified that the normal hourly rate in Central

---

[3] The Court finds that Mr. Luczak is a qualified expert on the issue of a reasonable

Florida for litigation of this type is in the $300 to $400 range, and that the rates charged by defense counsel here were well below the market rate.   In the process of arriving at a reasonable attorney's fee for this case, Mr. Luczak reviewed all of the pertinent documents, including Defendant's time entries.   Using the federal lodestar test, Mr. Luczak concluded that as of May 21, 2019, defense counsel had expended a total of 129.4 hours on this dispute.   At a blended rate of $244, this amounted to a total (reasonable) fee of $31,670.00.[4]   Mr. Luczak also opined that, going forward, defense counsel would incur an additional 19 hours in connection with the disqualification issue, resulting in an additional reasonable fee of $4,675.00.   At his own hourly rate of $400, Mr. Luczak estimated he would expend a total of 22 hours, for a fee of $8,800.

Plaintiffs' counsel offered no evidence on their own behalf.

Following the hearing, plaintiffs' counsel filed objections (Doc. 135) to PNC's amended time entries, and Defendant filed a response (Doc. 136).   In their objection, Plaintiffs' counsel contend that the Defendant should not be able to recover for time spent (1) attempting to disqualify Mr. Wooten or (2) preparing for and attending the evidentiary hearing.   Plaintiffs' counsel also object to the recovery of Mr. Luczak's fee and recovery for any time entries that contain a redaction.   Finally, Plaintiffs' counsel make generalized objections to the reasonableness of certain categories of Defendant's time records.

In its response, Defendant points out, among other things, that Plaintiffs' counsel identified only 12.2 hours of time that related to Mr. Wooten's disqualification; that expert fees are

---

attorney's fee and that his testimony complies with the requirements of Rule 702 of the Federal Rules of Evidence.

   [4] Mr. Luczak's starting point here is one-tenth of an hour (and $27.00) below the comparable figures requested in defense counsel's first two fee affidavits.   The discrepancy was not raised or explained at the hearing.   Accordingly, in calculating the fee award, the Court will use the smaller figure – i.e., Mr. Luczak's.

recoverable as a part of a sanction award, and that the time spent preparing for and attending the Court-ordered evidentiary hearing was necessarily incurred.

## II.   Legal Standard

Federal courts possess "inherent powers," not conferred by rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).   That authority includes the ability to fashion an appropriate sanction for conduct that abuses the judicial process.   *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).   One permissible sanction is an assessment of attorney's fees – an order instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side.   *Id.*, at 45, 111 S.Ct. 2123. Such a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature.   *See Mine Workers v. Bagwell*, 512 U.S. 821, 826-830, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (distinguishing compensatory from punitive sanctions and specifying the procedures needed to impose each kind).   In other words, the fee award may go no further than to redress the wronged party "for losses sustained"; it may not impose an additional amount as punishment for the sanctioned party's misbehavior.   *Id.*, at 829, 114 S.Ct. 2552 (quoting U*nited States v. Mine Workers*, 330 U.S. 258, 304, 67 S.Ct. 677, 91 L.Ed. 884 (1947)).   The necessary causal connection is appropriately framed as a but-for test:   The complaining party may recover only that portion of its fees that it would have paid but for the misconduct.   *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1187, 97 L.Ed.2d 585 (2017).

## III.   Analysis.

In cases in which fees are authorized by judicial doctrine, the primary method used by courts in assessing attorney-fee awards is referred to as the "lodestar approach".   4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2675.2 (4th ed.).   Under the

lodestar approach, the starting point for determining a reasonable attorney's fee involves multiplying the number of hours expended times the rate generally assessed for comparable work in the area. *Id.* Here, the hourly rates charged by defense counsel are patently reasonable; indeed, they are well below the market rate for work of this type handled by lawyers with similar skill and experience in Central Florida. The reasonableness of these rates was confirmed by Defendant's fee expert, Mr. Luczak, and are entirely consistent with the Court's own experience in this regard. Finally, it is worth noting that though they refused to stipulate as to the rates, Plaintiffs' counsel never registered an objection to the hourly rates charged by defense counsel.

With respect to the hours expended, the Court credits the testimony of defense counsel and Mr. Luczak that reasonable billing judgment was used.[5] Having reviewed Defendant's time entries, the Court is satisfied that the amount of time recorded was reasonably expended as a result of defense counsel's misconduct, with one exception: The Court will deduct 12.2 hours at a blended rate of $244 – for a total of $2,976.80 – for the time related to the effort to disqualify Mr. Wooten.

With respect to preparation for and attendance at the evidentiary hearing, that hearing was ordered by the Court to ensure that Plaintiffs' counsel had the opportunity to cross-examine Defendant's witnesses and present evidence on their own behalf. Since Plaintiffs' counsel would not even stipulate to the reasonableness of defense counsel's hourly rates, it was obviously necessary for defense counsel to prepare for and participate in the hearing ordered by the Court. Moreover, it was perfectly reasonable for defense counsel to support their claim with the testimony of Mr. Luczak. And, contrary to the argument of Plaintiffs' counsel, the Court may award expert witness fees under its inherent authority. *See Environmental Manufacturing*

---

[5] Plaintiffs' counsel did not cross-examine Mr. Luczak. Thus, his testimony is uncontroverted.

*Solutions, LLC v. Peach State Labs, Inc.*, 274 F.Supp.3d 1298, 1330 (M.D. Fla. 2017) (stating same and citing cases).

With respect to the redactions on Defendant's time records, those redactions were necessary to preserve the attorney-client privilege, and the redactions do not mask the substantive work performed. If Plaintiffs' counsel truly had any concerns about the redacted entries, they could have inquired of Defendant's counsel at the hearing. They did not, and it is disingenuous for Plaintiffs' counsel to now suggest they were prejudiced by the redactions. The same is true with respect to Plaintiffs' counsel's contention that the time entries are too vague or not sufficiently particular. The Court has reviewed these entries and finds them to be adequately descriptive of the services performed.

## IV. Conclusion.

Having considered the evidence and argument of counsel, the Court will grant Defendant's motion and award Defendant an attorney's fee and cost sanction against Newhart and Card, jointly and severally, in the amount of $42,767.25, quantified as follows:

Fees from 6/1/18 – 5/21/19

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| New | 1.7 | $ 275 | $ 467.50 |
| Israel | 49.4 | 275 | 13,585.00 |
| Kisz | 78.3 | 225 | 17,617.50 |
| **Subtotal** | 129.4 | $ 244.74 (blended) | **$31,670.00** |
| Less the time expended on Wooten disqualification | | | ($2,976.80) |
| **Fees through 5/21/19** | | | **$28,693.20** |

| | |
|---|---:|
| Additional work after 5/21/19 | 4,675.00 |
| Luczak expert fee (22 hours at $400) | 8,800.00 |
| Costs | 599.05 |
| **Total 5/21/19 - date** | **$14,074.05** |
| **Total up to 5/21/19** | **$28,693.20** |
| **Grand Total** | **$42,767.25** |

### V.   Conclusion

It is hereby **ORDERED** that Defendant's Motion to Quantify Attorney's Fees and Costs

(Doc. 109) is **GRANTED**.   Defendant is awarded fees and costs in the total sum of $42,767.25.

The Clerk is directed to enter judgment for Defendant in this amount against Plaintiffs' counsel,

Darren Newhart and J. Dennis Card, jointly and severally.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 11, 2019.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**DONALD A. PETERSON and LORI HILDMEYER,**

                **Plaintiffs,**

**v.**                                **Case No: 6:18-cv-84-Orl-31DCI**

**PNC BANK, N.A.,**

                **Defendant.**

---

## JUDGMENT IN A CIVIL CASE

**Decision by Court.**  This action came before the Court and a decision has been rendered.

      **IT IS ORDERED AND ADJUDGED** that the Defendant is awarded attorney's fees and

cost in the total sum of $42,767.25 against Plaintiffs' counsel, Darren Newhart and J. Dennis Card,

jointly and severally, for which sum let execution issue.

Date: July 12, 2019

                            ELIZABETH M. WARREN,
                            CLERK

                            s/B. Acevedo, Deputy Clerk

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders**: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. V. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

    (b)  **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), Williams v. Bishop, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. Section 1292(a)**: Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5**: The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule**: Limited exceptions are discussed in cases including, but not limited to: Cohen V. Beneficial Indus. Loan Corp., 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F. 2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2.  **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

    (a)  **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD - no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)  **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)  **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)  **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)  **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.  **Format of the notice of appeal**: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4.  **Effect of a notice of appeal**: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).